STATE OF IOWA, Appellant, v. LEWIS F. WHEELOCK, Appellee.

No. 41966.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, Carl A. Burkman, County Attorney, and Francis J. Kuble, Assistant County Attorney, for appellant.

Thomas J. Guthrie and George A. Wilson, for appellee.

EVANS, J.—This prosecution is the outcome of a tragedy that occurred on June 21, 1931, in the near vicinity of Des Moines. On that day an automobile collision occurred which resulted in the death of three persons—a mother and her two young daughters. The drivers participating in the collision were Telfer and Wheelock, the defendant. The victims of the accident were the wife and two daughters of Telfer. After the accident, each driver cast the blame upon the other. Shortly thereafter three indictments were returned against this defendant, each indictment being predicated upon the wrongful death of one of the victims. In the record of the district court these indictments were numbered 25321, 25322, and 25323. The names of the victims were respectively, Merwyn Telfer, Mildred Telfer, and Erma Telfer. Indictment No. 25322 charged the defendant with responsibility for the wrongful death of Mildred Telfer, the mother. Shortly after the return of that indictment it was prosecuted to judgment in the district court and a verdict of not guilty was rendered therein. The present case is predicated upon indictment No. 25323, which charged the wrongful death of Erma Telfer. As already indicated, the defendant pleads in this case his former acquittal in case No. 25322. The question presented to us is whether the defendant was subject under the circumstances to three prosecutions under three indictments or whether a prosecution of one operated as a bar to the others. The appeal is by the state. Broadly speaking the state contends that the killing of three persons necessarily results in the commission of three separate offenses, and that therefore judgment in one may not operate as a bar to another. On

the other hand, the defendant contends that the act of transgression charged against the defendant was essentially and in a legal sense a single act, the result of which was at no time contemplated or intended by the defendant. The question is one which has had much consideration in many authorities. Counsel for each side respectively have presented able and exhaustive briefs, and the task presented to us consists mainly in a consideration of these authorities.

Introductory to our consideration of the subject we set forth here, for convenient reference later, certain statutes and constitutional provisions.

The Constitution of Iowa, article I, section 12, provides:

"No person shall after acquittal, be tried for the *same offense*."

Code, section 13807, provides:

"A conviction or acquittal by a judgment upon a verdict shall bar another prosecution for the *same offense,* notwithstanding a defect in form or substance in the indictment on which the conviction or acquittal took place."

Code, section 13808, provides:

"When a defendant has been convicted or acquitted upon an indictment for an offense consisting of different degrees, the conviction or acquittal shall be a bar to another indictment for the offense charged in the former or for any lower degree of that offense, or for an offense necessarily included therein."

Code, section 13915, provides:

"The jury must render a general verdict of 'guilty' or 'not guilty', which imports a conviction or acquittal on every material allegation in the indictment, except upon a plea of former conviction or acquittal of the same offense, in which case it shall be 'for the state' or 'for the defendant', and except in cases submitted to determine the grade of the offense and, when authorized, fixing the punishment therefor."

The basic proposition emphasized by the state is that the prohibition of double jeopardy under the Constitution and under the statute is applicable only where the "same offense" is involved. In identifying an offense as the "same offense", the state contends that the indictments must disclose the identity both "in fact and in law"

and that there must be an identity, not only of the act of transgression charged against the defendant, but also of the indictable offense as named and defined by the statute. This indicates the general objective of the state's argument. On the other hand, the defendant contends that, in order to find a plurality of offenses, the circumstances must have been such as to warrant a finding that the plurality was contemplated and intended. Cases of murder, robbery, and larceny often come within this category; whereas, in the case at bar, the single act of transgression was that of negligence. The actual results thereof were not contemplated at all and no killing was intended. Concededly the manslaughter was involuntary. The debate between counsel comes down to the point whether the authorities recognize a distinction as to the plurality of offenses which result from accidental causes and those which result from distinct criminal intent and intentionally felonious acts.

As bearing upon the question of defining the term "same offense" as contended by the state, we may begin our discussion by reference to State v. Price, 127 Iowa 301, 103 N. W. 195, 197. In that case two indictments were returned against the defendant,—one charging him with rape and another with incest committed in each case upon his own daughter under age. Being put to trial on the charge of rape, he was acquitted. He pleaded his acquittal as a bar to the prosecution of the incest case. The plea was sustained here. Though the offenses *charged* were not the same either in statutory definition or in name, the act of *transgression* was the same. We held that the acquittal upon the charge of rape necessarily negatived the charge of incest. The discussion of Mr. Justice Deemer in that case has much pertinence to the case before us, and we quote therefrom:

"In State v. Mikesell, 70 Iowa 176, 30 N. W. 474, it is held that a former acquittal of the charge of larceny is a bar to a prosecution for robbery for the taking of the same money. Here the charges are not the same, but, as said in the opinion: 'The acquittal on the former charge then is a judicial determination that he was not guilty of the larceny charged in that indictment, which is the same property that is described in the indictment on which he was convicted. That acquittal is a bar, not only to an indictment for the larceny of the property, but for any other offense of which such larceny is an essential element.' In Scott v. U. S., Morris (Iowa) 142, it was held that an acquittal for manslaughter is a bar to an

indictment for murder, on the theory that the acquittal was a judicial determination that the defendant did not unlawfully take the life of the deceased, and, consequently, was not guilty of any offense of which such unlawful killing was a necessary element. In State v. Gleason, 56 Iowa 203, 9 N. W. 126, it was held that a conviction for petit larceny before a justice is a bar to a subsequent prosecution on indictment for larceny from the person; the reason given being that, if defendant had been acquitted before the justice, this would have been a bar to another prosecution for stealing from the person, because, if he was not guilty of larceny, he could not be of stealing from the person. In State v. Murray, 55 Iowa 530, 8 N. W. 350, it is held that a conviction for petit larceny is a bar to a prosecution for grand larceny based upon the same facts. In State v. Cooper, 13 N. J. Law 361, 25 Am. Dec. 490, it was held that one convicted of arson could not afterwards be tried for murder, in the commission of the same arson, where the statute imposed the penalties of murder for such arson. In State v. Lewis, 9 N. C. 98, 11 Am. Dec. 741, it was decided that, where two indictments for a felonious taking of goods were found against a prisoner, one charging him with burglary and larceny and the other with robbery, and under the first indictment he was convicted of larceny, he could not be tried upon the second indictment. See, also, Roberts v. State [14 Ga. 8, 58 Am. Dec. 528], supra.

"These general rules are practically conceded by the state, but counsel contend that, as the state elected in the one case to rely upon an act of intercourse said to have been committed on October 28th, and in the other upon an act committed on November 12th, they do not apply, and are not controlling. This proposition is unsound. When the jury was sworn in the rape case, defendant was in jeopardy as to every act of intercourse committed by him with the prosecutrix during the period covered by the indictment; and upon a verdict of not guilty being returned the state could not have reindicted and tried him for an act of intercourse committed at some time within the period covered by the indictment, for which the state did not elect to prosecute. This is fully established by the authorities already cited."

On the question of the identity of the offenses as the "same offense" the definition contended for by the state is negatived also in the following cases: State v. Blackledge, 216 Iowa 199, 243 N. W.

534; State v. Folger, 204 Iowa 1296, 210 N. W. 580; State v. Purdin, 206 Iowa 1058, 221 N. W. 562.

On this same subject we quote from Bishop's Criminal Law, vol. 1, (9th Ed.) section 1060, page 785, the following:

"To give our constitutional provision the force evidently meant, and to render it effectual, 'same offense' must be interpreted as equivalent to the *same criminal act.*"

In the case at bar it is stipulated that the evidence to be introduced upon the prosecution is identical in every respect with the evidence that was introduced in the first prosecution, save only in the name of the injured party. A more complete identity could not be conceived of than is indicated in this stipulation. Under section 13915, every material allegation charged in each indictment was completely negatived by the acquittal upon the first prosecution. Under the doctrine of State v. Price, supra, if the defendant was not guilty of the conduct that resulted in the death of Mrs. Telfer, as adjudicated in the first prosecution, he could not be guilty of causing the death of either daughter. The acquittal in the first prosecution would be completely contradicted by a conviction in the second.

II. We pass to a more specific consideration of the authorities on the distinction to be observed as between a single offense on the one hand or a multiple offense on the other. In State v. Korth, 204 Iowa 1360, 217 N. W. 236, 237, we stated the following definition of involuntary manslaughter:

"Involuntary manslaughter is the unlawful killing of a human being unintentionally and without malice, express or implied, but in the commission of some unlawful act not amounting to a felony, or some lawful act in an unlawful or negligent manner. An intent to kill is not an essential element of the offense, and its absence distinguishes it from voluntary manslaughter."

People v. Barr, 259 N. Y. 104, 181 N. E. 64, 65, is an instructive case upon the subject before us. It was handed down by the Court of Appeals within the past year. It involved the prosecution of the defendant on a charge of manslaughter for wrongfully causing the death of ten persons as the result of a fire, which the defendant should have avoided, as alleged. The defendant was charged with negligence in failing to install a system of automatic sprinklers

in the building where the fire occurred. All the deaths resulted from the same cause. The question presented for the consideration of the court was whether it involved a single offense resulting in the death of ten persons or whether the defendant was guilty of ten offenses. The circumstances of the death in the various cases were identical. The trial court held that ten offenses were presented. This holding was reversed by the Court of Appeals, which held that only a single offense was involved. The court said:

"In our judgment, the beneficent purpose of the statute should not be nullified by a narrow technical construction which would, while apparently following the letter of the law, destroy its spirit. We believe that to permit ten separate indictments before ten different grand juries without the direction of the court and ten separate trials on the charge of manslaughter, all growing out of the failure of the relators to install an automatic sprinkler system in the building in question, would be contrary to the statute. True it is that ten indictments are not involved in this case; still the principle here asserted is the same. There is no pretense that relators had any intent in fact to commit the crime of manslaughter. The alleged crime was accidental and involuntary, not the result of an affirmative intentional act, but the result of negligent failure to act.

"While there is great dearth of authority upon the exact question presented, we believe that Chief Judge Church, in an exhaustive and painstaking opinion in the case of Woodford v. People, 62 N. Y. 117, 127, 20 Am. Rep. 464, has pointed the way to the decision which we should make, upon the facts involved in this case. It is not necessary, however, to express an opinion in regard to all of the statements contained in that opinion. Sufficient it is to hold that the principle there announced is applicable to the facts in this case.

"In that case the indictment in one count charged that the defendant and another burned thirty-five dwelling houses by the single act of setting fire to one building. The defendant moved to quash the indictment for duplicity on the ground that the burning of each house was a separate crime. The contention was overruled. The court said: 'They are charged to have been burned by a single act of firing and burning. A conviction upon separate indictments * * * may have been good for any one, and a conviction or acquittal upon such an indictment would be a bar to an indictment for burning any other house burned by the same act. These consequences must follow from the position that there was but one crime commit-

ted in respect to all the dwelling-houses, and that the respective counts charged but one crime.' "

Smith v. State, 159 Tenn. 674, 21 S. W. (2d) 400, 402, is another case involving manslaughter. The defendant in the case was a motorist who had accidentally struck two boys with his motor-car, killing one and greatly injuring the other. He was prosecuted by two indictments, one of them charging the manslaughter for the killing and the other charging assault. The court said:

"It is contended for the plaintiff in error that the facts proven show a single transaction, involving a single criminal intent, and that his conviction for manslaughter is a bar to the conviction for the assault upon James Edward Johnson, and also a bar to the conviction for driving an automobile while drunk.

"We think this contention must be sustained in so far as it is directed to the conviction for an assault. The facts proven do not suggest an actual intent or purpose to harm either of the two boys, and the injury to both was the result of the reckless and unlawful operation of his automobile by the plaintiff in error."

Another recent manslaughter case (1927) is State v. Cosgrove, 103 N. J. Law, 412, 135 A. 871. In that case an automobile driver struck two girls while they were crossing a street hand in hand. One of the girls was killed and the other severely injured. Two indictments were returned against the defendant,—one for manslaughter and the other for "atrocious assault and battery". Upon a trial for manslaughter he was acquitted of responsibility for the death of the one. His acquittal was pleaded in bar of the indictment for "atrocious assault and battery" and such plea was sustained. The New Jersey Court said:

"In the case of State v. Cooper [13 N. J. Law, 361, 25 Am. Dec. 490], the defendant was indicted for murder. He pleaded a prior conviction of the crime of arson. It appeared that, having set fire to the dwelling house, the person, subject of the indictment for murder, was burned to death as a result of the arson. The court sustained the plea of *autrefois* convict as a bar to the indictment for murder upon the ground that both crimes were the direct product of the same act."

The case of Commonwealth v. Ernesto, 93 Pa. Super. Ct. 339, is another recent manslaughter case. In that case the defendant

was charged with negligence resulting in the breaking of a dam causing the death of three women named. The court said:

"The negligent act, if any, which caused the breaking of the dam, was the act which caused the deaths of the three women named. There was but one causal effect, though the result affected many parties. * * * . Where there is but one act or cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth."

Another recent case is Spannell v. State, 83 Tex. Cr. R. 418, 203 S. W. 357, 358, 2 A. L. R. 593. In that case the defendant intentionally shot and killed one Butler in alleged self-defense. A bullet fired at Butler killed the defendant's own wife at the same time. The killing of the wife was wholly unintended. Two indictments were returned against the defendant, one for the killing of his wife and the other for the killing of Butler. The defendant was first tried upon the indictment for the killing of his wife. The case was tried on the theory that, if the defendant shot Butler in justifiable self-defense, then he was not guilty of murder for the accidental shooting of his wife, and vice versa. He was acquitted upon the charge of killing his wife. His acquittal was pleaded in bar of the further prosecution on the charge of murder as to Butler, and the plea was sustained. The court said:

"If he shot at Butler and in the same act killed Mrs. Spannell unintentionally, his guilt or innocence of each of the homicides would depend on whether in shooting at Butler he acted with malice or in self-defense. Assuming that the shots were fired at Butler only, and killed Mrs. Spannell, appellant having no intent or volition to injure her, to determine whether he was guilty or innocent on his trial for her murder it was necessary to decide whether in shooting at Butler he acted in self-defense or with malice. On this state of facts the decision that he was innocent of the murder of Mrs. Spannell necessarily involves the finding that appellant's act in firing at Butler was not such as to constitute murder.

"It follows that, whether in shooting at Butler appellant acted with malice, or was justified, if in the same act, with no volition to injure his wife, he killed her, there could be but one offense, and the state, prosecuting under separate indictments for each of the homicides, would be concluded as to both by the judgment rendered

in one of them.   *   *   *   'Where there is one act, one intent, one volition, as is evidenced by the testimony of appellant in this case, then appellant cannot be convicted upon an act, intent, and volition for which he had been previously acquitted.' "

In State v. Colgate, 31 Kan. 511, 3 P. 346, 348, 47 Am. Rep. 507, the question here under consideration was fully discussed. In that case the defendant was indicted and prosecuted for burning a mill. Upon such charge he was acquitted. Subsequently he was prosecuted for burning the books of accounts used in the mill. The same fire was referred to in both indictments. The opinion in that case contains a concise review of the authorities on the subject, and we set forth a part of it herein:

"And, generally, we would think that the commission of a single wrongful act can furnish the subject-matter or the foundation of only one criminal prosecution.

"Thus, in Iowa, it has been held that where a person uttered at a bank several forged checks at one time and by the same act, he committed but one offense, and that a conviction for uttering one of the checks was a bar to a conviction upon the others. State v. Egglesht, 41 Iowa 574, 20 Am. Rep. 612.

"In Connecticut it has been held that where a person has in his possession, at the same time, several forged bank-notes of different banks, with the intent to pass them, and thereby defraud the person who might take them, and also defraud the several banks, such facts constitute only one offense, and a conviction founded upon the possession of any part of such bank-notes will bar a prosecution founded upon the possession of any other part of the same. State v. Benham, 7 Conn. 414.

"In New York it has been held that where a defendant has been acquitted of the offense of forging and counterfeiting certain indorsements on a promissory note he cannot be again tried for uttering and publishing as true, such indorsements. People v. Allen, 1 Parker, Cr. R. (N. Y.) 445.

"In Vermont it has been held that where a person by one blow wounds two men, a conviction for the assault and battery charged to have been committed on one of them is a bar to an indictment for the assault and battery as committed on the other. State v. Damon, 2 Tyler (Vt.) 387.

"In Indiana and Alabama it has been held that where a person

kills two other persons by the same act, he has committed only one crime, and if convicted for the homicide of one of them he cannot afterwards be tried for the homicide of the other. Clem v. State, 42 Ind. 420, 13 Am. Rep. 369; Ben v. State, 22 Ala. 9 [58 Am. Dec. 234]. Upon the same subject, and substantially to the same effect, see Womack v. State, 7 Cold. (Tenn.) 508.

"In Ohio it has been held that where several articles of property are stolen at the same time, the transaction being the same, the larceny of the whole of the articles, although they belong to different owners, may be embraced in one count of the indictment, and the taking thereof charged as one offense. State v. Hennessey, 23 Ohio St. 339, 13 Am. Rep. 253.

"In Texas it has been held that the stealing, at the same time and place, of several articles belonging to different persons, is but one offense, and a conviction for the larceny of one of such articles is a bar to an indictment for the larceny of another. Wilson v. State, 45 Tex. 76, 23 Am. Rep. 602. To the same effect see Hudson v. State, 9 Tex. App. 151, 35 Am. Rep. 732; Rex v. Jones, 4 Car. & P. 217; Jackson v. State, 14 Ind. 327; Lorton v. State, 7 Mo. 55 [37 Am. Dec. 179]; State v. Williams, 10 Humph.(Tenn.) 101; Fisher v. Com., 1 Bush (Ky.) 211 [89 Am. Dec. 620]; People v. McGowan, 17 Wend. (N. Y.) 386.

"In Kentucky it has been held that, although the setting up of a gaming-table is one offense, and the keeping of a gaming-table and inducing others to bet thereon is another offense, yet that when they are both committed by one person, and at the same time, they are but one offense, and may be set forth in one count, and will authorize but one punishment. Hinkle v. Com., 4 Dana (Ky.) 518. .

"In Tennessee it has been held that a conviction for running a horse-race is a good defense to a prosecution for betting on the same race. Fiddler v. State, 7 Humph. (Tenn.) 508.

"In Georgia it has been held that a conviction for burglary will bar a prosecution for robbery, where the two prosecutions were admitted to be founded upon the same transaction. And the court laid down the broad doctrine that one prosecution will bar another 'whenever the proof shows the second case to be the same transaction with the first.' Roberts v. State, 14 Ga. 8 [58 Am. Dec. 528]. And in the same state it was held that a conviction for burglary will 'bar a prosecution for robbery if the circumstances of the robbery were put in proof in order to make out the case for

which the prisoner was tried and convicted on the first indictment, because in such case the robbery constituted a *part* of the same transaction for which the prisoner was first tried.' Copenhaven v. State, 15 Ga. 264.

"In North Carolina it has been held that a conviction for larceny, upon an indictment for burglary and larceny, will bar another prosecution for robbery where the robbery and the larceny were for the same felonious taking of the same goods. State v. Lewis, 2 Hawks (9 N. C.) 98 [11 Am. Dec. 741].

"In New York it has been held that an indictment charging as a single act the burning of a number of designated dwelling-houses charges but one offense. Woodford v. People, 62 N. Y. 117, 20 Am. Rep. 464. Substantially to the same effect see Com. v. Squire, 42 Mass. [1 Metc.] 258.

"In New Jersey it has been held that where a person has been convicted of arson he cannot afterwards be tried on an indictment for the murder of a person whose death was alleged to have been caused by the arson. State v. Cooper, 1 J. S. Green (13 N. J. Law) 361, 25 Am. Dec. 490."

The rule deduced from the cases is stated in 16 C. J. 283, as follows:

"Although crimes are not usually identical if committed against different persons, yet by the weight of authority where the same act or stroke caused the death of two persons, an acquittal or a conviction of the murder of one bars a subsequent prosecution for the killing of the other, because the killing is but one crime and cannot be divided."

We turn to a consideration of our own cases as bearing upon the question here considered. The first of these is State v. Egglesht, 41 Iowa 574, 20 Am. Rep. 612. This is referred to and reviewed by the Kansas court in the Colgate case above cited. In that case, we said:

"We think the decided weight of reason and of authority supports the position that when defendant by one muscular action and one volition passed to the bank in question four forged checks, and procured them to be placed to his credit, he committed one crime, and not four."

In State v. O'Mally, 48 Iowa 501, the defendant was indicted for threatening to kill. His threat was addressed to two persons and applied to both of them. It was held that the gist of the offense was the threat. It was *one* threat, and constituted a single offense and not two. Such was our holding.

In State v. Layton, 25 Iowa 193, the defendant was indicted for *keeping* intoxicating liquor with intent to sell the same contrary to law. By another indictment covering the same period he was charged with the crime of *selling* intoxicating liquor at the same place contrary to law. We held that the conviction under one indictment was a bar to prosecution under the other.

In State v. Mikesell, 70 Iowa 176, 30 N. W. 474, one indictment was returned against the defendant charging him with the crime of robbery committed by taking money from a dwelling house. The other crime charged him with larceny for taking the same money. He was tried and acquitted upon the latter charge. He pleaded the acquittal in bar of the other prosecution, and we sustained the bar.

In State v. Stone, 75 Iowa 215, 39 N. W. 275, the defendant was prosecuted under two indictments. The first charged him with uttering a false note and mortgage. The second indictment charged him with obtaining property by false pretenses, in that he gave said note and mortgage in exchange for other property. Both indictments refer to the same transaction. The defendant was first tried on the charge of having uttered a false note and mortgage and was acquitted thereon. He pleaded the acquittal in bar, and the bar was sustained.

Of our own cases, the one most nearly in point is State v. Sampson, 157 Iowa 257, 138 N. W. 473, 42 L. R. A. (N. S.) 967. In that case the defendant was prosecuted by information for the larceny of a watch and was likewise prosecuted under an indictment for the alleged larceny of money from a dwelling. The larceny both of the watch and of the money all occurred at the same time. The watch belonged to one companion and the money to another. The appeal in that case turned upon the question whether the offense committed was *one* offense or *two*. The defendant was prosecuted by information before a justice of the peace for the larceny of the watch and convicted. Thereafter he pleaded his conviction as a bar to the prosecution under the indictment. The trial court submitted the issue as a question of fact to the jury and directed the jury to

determine whether the circumstances of the taking rendered the taking as a single transaction or a double one. The jury found adversely to the defendant and convicted him. We held on appeal that the transaction was undisputedly a single transaction and applied the rule accordingly. We quote from the opinion in this case:

"That an instant or several minutes may have intervened between seizing the watch and the purse can make no difference if these were a part of the same transaction wherein the accused carried out his design of stealing these articles. Nor does the circumstance that the property belonged to different persons render the transaction divisible into two offenses. The state may not split up and prosecute separately distinct parts of the same crime. Undoubtedly, many authorities may be found holding that where a man simultaneously takes two or more articles belonging to different persons, even though at the same time, he may be separately prosecuted for the taking from each owner."

Our opinion also incorporates the following quotation from State v. Emery, 68 Vt. 109, 34 A. 432, 54 Am. St. Rep. 878:

"The theft of several articles at one and the same time and place, and by one and the same act, constitutes but one indivisible crime, even though the articles belong to different owners; and the judgment of conviction or acquittal of the theft of one of the articles is a bar to a prosecution for the theft of the others. A prosecution and conviction or acquittal for any part of a single crime bars any further prosecution based upon the whole or a part of the same crime. It is equally well settled that if, on the same expedition, there are several distinct larcenous takings, as taking the goods of one person at one place, and afterwards taking the goods of another person at another place, and so on, as many crimes are committed as there are several and distinct takings."

We also quoted from State v. Hennessey, 23 Ohio St. 339, 13 Am. Rep. 253, as follows:

"The particular ownership of the property which is the subject of a larceny does not fall within the definition, and is not of the essence of the crime. The gist of the offense consists in feloniously taking the property of another; and neither the legal nor the moral quality of the act is at all affected by the fact that the property stolen, instead of being owned by one or by two or more jointly,

is the several property of different persons. The particular owner-ship of the property is charged in the indictment, not to give char-acter to the act of taking, but merely by way of description of the particular offense."

We quoted also from Hudson v. State, 9 Tex. App. 151, 35 Am. Rep. 732, as follows:

"In order to avoid misapprehension, it may be well to say that, when various articles are stolen at the same time and place, the transaction is not divisible, but is one transaction, and that a prosecution for the theft of a portion of the articles so taken would bar a prosecution for the theft of another portion of the same ar-ticles, whether the property belonged to or was in the possession of the same person or different persons. But we must not be under-stood as holding that the different articles taken from different per-sons and from different places, as from different rooms of a house occupied by different persons, would necessarily be one transaction; but, on the contrary, that property thus situated would on proper averments and proof support different prosecutions. For example, if a thief should enter the room of one lodger at a hotel, and should there perpetrate a theft, and should then pass to the room of another lodger and there commit another theft, these would be different thefts, and each might be prosecuted separately, and a conviction or an acquittal for the one would be no bar to the prosecution of the other. So in case of one horse being taken from the inclosure of A., and another from the inclosure of B., these would be separate offenses. What the law prohibits is the cutting up of one transaction into different offenses, and holding one accused liable for more than one penalty when there has been but one violation."

In the cited opinion, we said:

"There is no logical escape from this conclusion that the theft of articles belonging to different persons at the same place and time constitutes a single offense. The matter of ownership does not characterize the crime. Neither the legal nor normal phase of the offense is affected by the fact that portions of property taken may have belonged to different persons, and there is no ground, on the one hand, for allowing the state to split up the single act of the accused into subjects for several prosecutions, nor, on the other, for denying it the right to prosecute for the entire transaction as a

single offense, aggravated by increased value of all the property stolen. As the watch and purse were stolen at the same place and time, but one offense was committed."

We think the foregoing is a sufficient indication of the state of the authorities, including our own cases, relied on by the appellee.

We turn therefore to an examination of the cases relied on by the State in support of its appeal.

III. The brief of the State makes the following concession as to the state of the authorities:

"It must be conceded that there are two distinct lines of authority and distinct lines of authority on the various separate crimes. It is apparent to the appellant that the various courts have decided the particular case as an individual matter and not as a general proposition. A definition of the same offense has been the issue but these words have been lost sight of in view of the facts in the particular case."

We give herewith a brief review of the principal cases cited and relied on by the State in support of its contention.

The first is Commonwealth v. Browning, 146 Ky. 770, 143 S. W. 407, 408. Two indictments were returned against Browning. One charged that the defendant maliciously shot and wounded Marion Stewart with intent to kill; the other charged that he maliciously and with unlawful intent shot and wounded Robert Caywood. It appears that both victims were struck by one load of shot. He was first tried for shooting Stewart. He pleaded self-defense. The jury found him guilty of "shooting and wounding in a sudden affray". He was accordingly punished. Upon the prosecution of the second indictment, the defendant pleaded the former jeopardy. The trial court sustained the plea, and the appellate court reversed the judgment. The court said:

"The offenses committed by appellee were not included within one another, though resulting from the same act, but were separate and distinct offenses," therefore not within and protected by former acquittal or conviction.

Again: Keeton v. Commonwealth, 92 Ky. 522, 18 S. W. 359, 360. Defendant was prosecuted under two indictments for robbery. The evidence was that the defendant while intoxicated met one Sal-

yers and Ham. He presented his pistol and demanded the watches and money from the two men and took the same. The court said:

"If the party is guilty, it is robbery from the person of each of the owners of this property, as much so as if the accused had gone to the one and taken from him his property, and then to the other; and the fact that the pistol was drawn on each at the same time, and the property delivered at once, does not make the offense a unit. It was an assault on each, and a robbery from the person, for which an indictment in both cases can be maintained."

The next case cited is Winn v. State, 82 Wis. 571, 52 N. W. 775. The defendant was Winn. He had quarreled in a saloon with one Defoy. He went home and returned with a loaded revolver and with an avowed intent of killing Defoy. They met in front of the saloon. Winn pointed the gun and pulled the trigger, but there was no discharge. Winn was seized by others, who attempted to disarm him. In the struggle the gun was discharged and Coates, a bystander, was killed. Winn was prosecuted under an indictment for the murder of Coates and was acquitted. He was then indicted as for a felonious assault on Defoy with intent to murder. He pleaded his former acquittal. The plea was denied, and Winn was tried and convicted. The conviction was sustained in the appellate court. The court held that an acquittal on the charge of murdering Coates was not a bar to the felonious assault on Defoy.

State v. Robinson, 12 Wash. 491, 41 P. 884. In that case defendant was prosecuted by separate indictments for the killing of two men, Schultz and Smith. Upon trial for the killing of Schultz he was acquitted. The court said:

"That such proofs in reference to two prosecutions for the commission of a single offense would be proper to go to a jury upon the question of former acquittal or conviction is beyond question, but to us it seems equally clear that proof which was necessary and competent to convict of one crime would have no weight upon such question in the prosecution for another, even although the same criminating circumstances were relied upon in the latter as in the former case. Was the killing of each of these men a distinct crime? They were killed in a single affray, and the connection of the appellant was substantially the same in his relations to such affray, as it related to each of such men. If the result of the meet-

ing at which the two were killed had been the death of only one of them, a prosecution for murder could have been founded upon his death, and under the circumstances of this case this would have been true whether the one so killed had been Schultz or Smith; and there can be no good reason why that which would have warranted a prosecution for murder should lose force by reason of the fact that another circumstance, which in itself would warrant such a prosecution, occurred at the same time and place. If the prosecution had been founded upon the killing of the two, and the case had gone to trial upon a plea of not guilty, proof of the killing of either of them would have warranted a conviction. It follows that the killing of each was, so far as the homicide was concerned, a distinct transaction. The taking of a human life *with certain intent* constitutes murder, and neither law nor public policy will justify a holding that each life is of less value when taken with another than it would be if taken alone. If a person without justification *intends* to kill A., and does so, he will be guilty of a crime; if he intends to kill B., he will be guilty of another and a different crime; and the fact that he entertains the *intent* to kill both, and carries such intent into effect at the same time and place, should not be held to make of that which would otherwise be a foundation for two distinct prosecutions a foundation for only one."

In Phillips v. State, 85 Tenn. 551, 3 S. W. 434, 435, the defendant was prosecuted under two indictments,—one charging him with burglariously committing a larceny by taking the dresses of a Mrs. Seawell; the other charging him with a like offense in that he took the dresses of Miss Seawell. On trial of the first indictment he was acquitted. He thereupon pleaded his former acquittal as a bar to the second prosecution. The court said:

"The goods of the two ladies, though in the same room, were in different parts of that room, and so far apart *that the thief could not have taken those belonging to the mother and those belonging to the daughter at the same moment of time, and by the same act.* * * * And if the thief had been apprehended in the middle of the room, as he passed from one side to the other with the goods already taken in his possession, the crime would have been perfect."

The state strongly urges herein that the latter Tennessee case is in direct conflict with our holding in State v. Sampson, supra. We think the cases are distinguishable, though the distinction may

be close. If conflict be conceded we must deem ourselves as governed by our own case and not by the Tennessee case.

In Thompson v. State, 90 Tex. Cr. R. 222, 234 S. W. 400, 243 S. W. 848, the defendant was prosecuted under two indictments. The defendant and his companions entered a gambling house and robbed a number of persons present. Upon trial of the first indictment the defendant was convicted of robbing Barnes. Upon being brought to trial for robbing Edwards, he pleaded his former conviction as a jeopardy, and his plea was denied.

State v. Billotto, 104 Ohio St. 13, 135 N. E. 285, is cited. In that case the defendant was prosecuted under two indictments,— one charging him with the killing of D. Campolo, and the other with the killing of J. Campolo, two brothers. He was first tried for the killing of D. Campolo and was acquitted. He then pleaded his acquittal in bar of the other prosecution. The state offered no evidence, and the case was submitted to the jury, which rendered a verdict of not guilty. It appears that the Campolos were killed by different bullets discharged from a gun in the hands of the defendant. The appellate court reversed the lower court and held in effect that there might be a reasonable doubt whether or not the defendant was guilty of killing D. Campolo, and yet was clearly guilty of killing J. Campolo.

The state cites a few of our own cases, which it concedes are not closely in point. Their general character may be indicated by a brief review.

In State v. Foster, 33 Iowa 525, the defendant was charged by indictment with the crime of assault with intent to inflict great bodily injury. He had previously been charged with, and convicted of, assault and battery before a justice of peace. This conviction was pleaded in bar of the prosecution under the indictment. This court held that the bar was not available. The law in this respect is well settled.

In State v. Ingalls, 98 Iowa 728, 68 N. W. 445, the defendant was prosecuted under two indictments, one for larceny and one for breaking and entering. He was acquitted upon the charge of larceny. This acquittal was pleaded in bar of the prosecution for burglary. We denied the plea in bar.

In State v. White, 123 Iowa 425, 98 N. W. 1027, the defendant was prosecuted under one indictment upon a charge of gambling;

and upon another indictment on a charge of keeping a gambling house. We held the two offenses to be distinct.

In State v. Broderick, 191 Iowa 717, 183 N. W. 310, the defendant was prosecuted under two indictments. One charged him with receiving stolen property, and the other with breaking and entering. He pleaded his conviction under the first indictment as a bar to prosecution under the second. We held the offenses distinct.

In State v. Norman, 135 Iowa 483, 113 N. W. 340, the defendant was prosecuted under two indictments for the larceny of fowl from different owners and from different premises on the same night. In the first case tried he was acquitted. He pleaded his acquittal as a bar to the prosecution of the other charge. We denied the plea and held the offenses to be distinct.

In State v. Jacobson, 197 Iowa 547, 197 N. W. 638, the defendant was prosecuted under an indictment charging him with assault with intent to commit rape. He was convicted of assault and battery. Subsequently he was indicted for alleged lewd acts committed upon a child under age as defined by statute. He pleaded his former conviction of assault and battery as a bar on the ground that the same act was involved. We held the offenses to be distinct.

In State v. Garcia, 198 Iowa 744, 200 N. W. 201, the defendant was charged by indictment with operating an automobile while intoxicated. He had previously been charged with intoxication and convicted therefor. We denied the plea in bar.

In State v. Folger, 204 Iowa 1296, 210 N. W. 580, the defendant was charged by indictment with the crime of larceny by embezzlement of oats committed in April, 1922. He was later indicted for the crime of embezzlement of money committed in June, 1923. He was acquitted on the latter charge. He thereupon pleaded his acquittal as a bar to the charge of embezzlement of the oats. His plea was denied. We held that the offenses were distinct, and that conviction under the first indictment would negative guilt under the second. We said:

"Not only are the offenses separate and distinct, but evidence which will sustain one would justify, if not require, an acquittal of the other."

The foregoing comprises the leading authorities cited by the State in its brief. It is urged by the State that they are contradictory to the authorities relied on by the defendant. To render harmonious

with each other all the cases cited in the two briefs is a task which we need not undertake. Whether the robbery of two persons under given circumstances, or the larceny of dresses from two women under given circumstances, should be deemed as a single offense or as a multiple one, is a question not necessary to determine for the purpose of this case. We have set forth the cases pro and con, only for the purpose of marshaling the authorities on the subject, be they in conflict or otherwise.

Except as to cases of involuntary manslaughter, it is not the purpose, or the purport, of this opinion, to establish any new precedent or to extend or restrict what has already been said in our own cases. Our opinion herein shall go no farther than to determine whether an involuntary manslaughter of two or more persons attributable to the single negligence of the defendant, without any intent on his part to cause any injury, is a single or a multiple offense. If the respective courts differ in their conclusions in cases involving other offenses, such difference arises nevertheless on the question of fact as to whether the *intent* of the perpetrator was single or plural. In the case before us there is no basis for the claim of multiple *intent* either as a question of fact or of law. In the careful research of counsel for the state, no manslaughter case has been found to support its contention. All the cases which involve manslaughter speak with one voice on this subject. Though this court has had no occasion to pass upon the question in a case of manslaughter, its holding in the cases above cited is clearly consistent with the holdings in the manslaughter cases cited herein.

In line with all the other courts, which have passed upon the specific question, we now hold only that an act of negligence on the part of a tort-feasor, which results in the involuntary killing of two or more human beings, is ordinarily a *single* offense and is subject to *one* prosecution. Such was the case here.

The judgment below is accordingly affirmed.

KINDIG, CLAUSSEN, DONEGAN, and MITCHELL, JJ., concur.